UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
VINCENT FRANCO III,

                Plaintiff,

      - against -

DENNIS M. SIRY and VILLAGE OF
AMITYVILLE,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-4674 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Vincent Franco III ("Franco" or "Plaintiff") brings this action for violations of the Fourteenth Amendment of the United States Constitution against the Village of Amityville ("Amityville" or "the Village") and its mayor, Dennis M. Siry ("Mayor Siry") (collectively, "Defendants"). Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. For the reasons described below, Defendants' Motion is granted, and Plaintiff's Second Amended Complaint is dismissed with prejudice.

## BACKGROUND

**I.    Factual Background**[1]

      In December 2019, Plaintiff, a home builder, bought and moved to a house on Marion Road ("the Marion Road Property") in the Village. (Second Am. Compl. ("SAC"), Dkt. 29 ¶ 8.) As

---

[1] For the purposes of Defendants' Rule 12(b)(6) Motion, the Court "accept[s] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022); *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021) (same). In addition, as explained in Part I of the Discussion section, *infra,* the Court incorporates judicially noticed facts.

relevant here and per the Second Amended Complaint, Plaintiff is a Republican and a "loud support[er] of [former President Donald] Trump." (*Id.* ¶¶ 9–11.)

Shortly after Plaintiff moved to Amityville, he "began light modification to expand and enlarge a new home on the property[.]" (*Id.* ¶ 10.) This initial modification included adding a second floor to the garage and required Plaintiff to request various permits and zoning variances from the Village. (*Id.*) In or about January 2020, Plaintiff was accused of planning to use his house for commercial storage or a three-family dwelling at a Village meeting. (*Id.* ¶ 15.)[2] At this meeting, Mayor Siry "made it clear that he would make sure that any attempt to receive any [zoning] variance not already requested by Plaintiff [would] be blocked." (*Id.*)

Throughout 2020 and 2021, Plaintiff made multiple applications for variances to the Village ZBA and attended multiple related Village meetings. (*See* 9/17/20 ZBA Meeting Mins., Dkt. 32-2 at 3; 11/19/20 ZBA Meeting Mins., Dkt. 32-3 at 5–6; 12/17/20 ZBA Meeting Mins., Dkt. 32-4 at 13; 5/20/21 ZBA Meeting Mins., Dkt. 32-5 at 7–8; *see also* SAC, Dkt. 29 ¶ 16.) At those meetings, Plaintiff attempted "to dispel false allegations that a larger, beautiful home that would improve the neighborhood was instead being built for nefarious purposes." (SAC, Dkt. 29 ¶ 16.)

Plaintiff appeared at one such Village BOT meeting on February 10, 2020. (2/10/20 BOT Meeting Mins., Dkt. 32-1 at 5.) At that meeting, Plaintiff explained that he had "lost his storage yard in Long Beach" and that, as a result, "when not on a job site," his equipment would be "stored

---

[2] It is unclear whether this meeting was a Village Board of Trustees ("BOT") or Village Zoning Board of Appeals ("ZBA") meeting. Plaintiff states that the meeting was a "board of trustees/zoning board meeting." (SAC, Dkt. 29 ¶ 15.) However, the BOT and the ZBA are distinct bodies with distinct memberships. *See* N.Y. Vill. Law § 7-712(3) (barring any person "who is a member of the village [BOT]" from serving on that village's ZBA). (*Compare* 2/10/20 BOT Meeting Mins., Dkt. 32-1 at 1 (listing members of Village BOT), *with* 9/17/20 ZBA Meeting Mins., Dkt. 32-2 at 1 (same for Village ZBA).)

in his yard" at the Marion Road Property. (2/10/20 BOT Meeting Mins., Dkt. 32-1 at 5.) Plaintiff sought formal permission to store four commercial vehicles at his home. (*Id.*) Several other Marion Road residents spoke at the meeting, stating that Plaintiff had "created a construction site" at his home, and that when Plaintiff's commercial vehicles mobilize at 5:00 or 5:30 in the morning, "they block the entire street." (*Id.* at 5, 10.) One neighbor testified "that her son [was] awakened at 5 am when [Plaintiff] start[ed] the trucks" in his yard. (*Id.* at 10.) The Village Trustees denied Plaintiff's motion to store the commercial vehicles at his home and reminded him "that the property is zoned residential, not commercial." (*Id.* at 5.) Mayor Siry, who serves on the Village BOT, "stated that [Plaintiff was] not permitted to run a business out of" his home. (*Id.* at 1, 10.)

In September 2020, Plaintiff applied for permission to build a fence taller than the Village code allowed. (9/17/20 ZBA Meeting Mins., Dkt. 32-2 at 3.) The ZBA granted that application unanimously. (*Id.*) In November 2020, the ZBA considered an application from Plaintiff to add first and second floor additions to his home, totaling over 3000 square feet. (11/19/20 ZBA Meeting Mins., Dkt. 32-3 at 5.) As a part of that application, Plaintiff sought a variance to permit his home to cover a higher percentage of the lot than the Village Code permits,[3] as well as to depart from prescribed setback requirements for the front and rear of his home. (*Id.*) The ZBA indicated that it needed additional time to review the application. (*Id.* at 6.) The next month, Plaintiff again appeared before the ZBA. (12/17/20 ZBA Meeting Mins., Dkt. 32-4 at 12–13.) At that meeting, Plaintiff "agreed to reduce the size of both the addition and the second story deck," and agreed to submit new plans. (*Id.* at 13.)

In May 2021, Plaintiff again appeared before the ZBA, this time with the revised plans. (5/20/21 ZBA Meeting Mins., Dkt. 32-5 at 7–8.) The proposed changes "eliminated the need for

---

[3] This is known as a "lot coverage variance."

3

lot coverage variance." (*Id.* at 8.)  The revised plans were approved with stipulations, including that Plaintiff had to "seek Planning Board Approval."[4] (*Id.*)  In July 2021, Plaintiff appeared before the Planning Board, which approved his plans with stipulations.  (7/1/21 Planning Bd. Meeting Mins., Dkt. 32-8 at 1–2.)  These stipulations included that Plaintiff had to "adhere to the plans submitted in conjunction with [his] application as approved," "obtain all proper building permits," and "abide by all applicable State, Village and Local codes."  (*Id.* at 2.)

In August 2021, Plaintiff began construction on his home.  (SAC, Dkt. 29 ¶ 19.)  The next month, Plaintiff contacted a Village building inspector to see if he could obtain a variance on the height of the roof of his garage, which would now exceed allowable height under Village law.  (*Id.* ¶ 20.)  The building inspector said that the variance would be addressed "at the final survey," and indicated that though the roof would now be over-height, "an exception" could be made.  (*Id.*)  Plaintiff continued construction on his home, including spending approximately $100,000 on the second floor and roof of the garage.  (*Id.* ¶ 21.)

In March 2022, Plaintiff called the Department of Buildings for a final sheeting and framing inspection.  (*Id.* ¶ 22.)  The Village's previous building inspector had been terminated, (*id.* ¶ 24), and so a different building inspector, Inspector Doerner,[5] performed the inspection, (*id.* ¶ 22).  After he completed the inspection, Inspector Doerner called Plaintiff, indicating that the roof "was built too high."  (*Id.* ¶ 22.)  Inspector Doerner then placed a stop work order on Plaintiff's property, which "sen[t] Plaintiff back to planning."  (*Id.* ¶ 23.)

---

[4] The Village Planning Board is a distinct body created by the Village BOT.  *See* N.Y. Vill. Law § 7-718(1).  Members of the Village BOT may not sit on the Village Planning Board.  *Id.* § 7-718(3).

[5] Plaintiff refers to this building inspector as Inspector "Doemer."  (*See, e.g.*, SAC, Dkt. 29 ¶¶ 22–23.)  Defendant states that the Inspector's last name is spelled "Doerner."  (Defs.' Br. Supp. Mot. Dismiss ("Defs.' Br."), Dkt. 30-15 at 5.)  The Court uses the spelling "Doerner."

In May 2022, Plaintiff asked Inspector Doerner whether the parties could reach a compromise if Plaintiff added a "barn style roof," which would lessen the extent of the necessary variance. (*Id.* ¶¶ 25–26.) According to Plaintiff's complaint, Inspector Doerner responded by saying that the "Township had never received any plans, when in fact it had," and "ma[king] it extremely clear that . . . due to personal biases on behalf of the Trustees, mayor, personally, professionally and due to the general unpopularity and biases of the community constituents as [sic] against Plaintiff, a variance would *never* occur." (*Id.* ¶ 26.) Moreover, Plaintiff alleges that "Mayor Siry said that he would ensure Plaintiff gets absolutely no approval on any further variance concerning the property, and [would] send[] local law enforcement to monitor Plaintiff's construction efforts[.]" (*Id.* ¶ 27.)

In late May 2022, Plaintiff, through an attorney, appeared once again before the ZBA, now seeking a height variance for the roof. (5/26/22 ZBA Meeting Mins., Dkt. 32-10 at ECF[6] 8.) At that time, much of Plaintiff's roof extended four feet vertically above the Village's 30-foot limit. (*Id.*) At the meeting, Inspector Doerner explained "that nothing . . . would have prevented [the addition] from being built in accordance with the architect's [pre-approved] plans." (*Id.* at ECF 9.) Both the Chairman of the ZBA and a representative of the local civic association expressed concern that "the ZBA [had] worked hard with [Plaintiff] over several hearings to get to a plan that worked for everyone," and now Plaintiff had disbanded that plan without seeking authorization from the ZBA. (*Id.* at ECF 8–9.) The ZBA unanimously denied Plaintiff's request for the variance. (*Id.* at ECF 9.)

---

[6] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

5

Plaintiff also alleges also that Mayor Siry and other residents of the Village "frown upon" contractors "because of [their] equipment" and "type of personalities." (SAC, Dkt. 29 ¶ 9.) Plaintiff further alleges that "Defendants ganged up on Plaintiff . . . because they did not want an individual who supported Trump to build such a large house in the neighborhood or be in the neighborhood at all." (*Id.* ¶ 13.)

Plaintiff asserts that as a result of Defendants' conduct, he has suffered damages in excess of $1,000,000 and experienced "extreme distress, emotional anxiety, embarrassment, humiliation, pain, mental suffering, financial loss, and a significant diminution in the quality of his life." (*Id.* ¶¶ 33–34.) In addition, Plaintiff alleges that "there are rodents running through the open areas of the halted construction of his home" and that "there is significant damage to finish construction in his home, including water damage, among other issues." (*Id.* ¶ 33.)

## II. Procedural History

On August 9, 2022, Plaintiff filed this action against Defendants, as well as against the members of the Amityville ZBA, Inspector Doerner, and two "Jane Does," alleging violations of the Fourteenth Amendment and negligence. (*See* Compl., Dkt. 2.) In response to the initial complaint, Defendants[7] requested a pre-motion conference regarding an anticipated motion to dismiss. (Defs.' Mot. for Pre-Mot. Conf., Dkt. 13.) Defendants explained that no claims were pleaded against the ZBA members and that Plaintiff never served the Village with a Notice of Claim as required to bring a negligence claim against it. (*See generally id.*) After initially failing to timely respond to Defendants' letter, (*see* 2/14/23 Docket Order), Plaintiff sought an extension of time to amend his complaint, indicating that he intended to dismiss all individual defendants

---

[7] The "Jane Doe" Defendants, who were never identified, were not parties to the request to file a dismissal motion. (*See* Pl.'s Ltr., Dkt. 14.)

apart from Mayor Siry, (Pl.'s Ltr., Dkt. 14). The Court directed Plaintiff to file his amended complaint by March 24, 2023, which Plaintiff failed to do. (2/21/23 Docket Order.) On March 31, 2023, Defendants requested leave to move to dismiss this action for failure to prosecute. (Defs.' Second Mot. for Pre-Mot. Conf., Dkt. 15.) The following day, Plaintiff requested an extension to file his now-overdue amended complaint. (Pl.'s Mot. for Extension, Dkt. 16.) The Court granted Plaintiff's request and ordered him to file his amended complaint by April 21, 2023. (4/10/23 Docket Order.) Plaintiff again missed the deadline and filed yet another belated request for extension. (Pl.'s Second Mot. for Extension, Dkt. 17.) The Court granted the request, warning Plaintiff that "[n]o further extensions w[ould] be granted." (4/27/23 Docket Order.)

On May 3, 2023, Plaintiff filed an amended complaint. (Am. Compl., Dkt. 18.) Defendants again filed a pre-motion conference request in anticipation of filing a motion to dismiss. (Defs.' Third Mot. for Pre-Mot. Conf., Dkt. 19.) The Court ordered Plaintiff to respond to Defendants' letter motion by May 18, 2023. (5/11/23 Docket Order.) Once again, Plaintiff did not respond to the Court's Order. (*See* 5/30/23 Docket Order.) The Court denied Defendants' motion for a pre-motion conference as unnecessary and set a briefing schedule for Defendants' motion to dismiss the amended complaint. (*Id.*)

Defendants served their Motion to Dismiss on June 28, 2023. (Mot. to Dismiss Cover Ltr., Dkt. 20.) Plaintiff, on the other hand, failed to timely serve his opposition on Defendants. (*See* 7/31/23 Docket Order; 8/3/23 Docket Order; 8/4/23 Docket Order.) Indeed, throughout the briefing process, Plaintiff missed numerous Court-ordered deadlines. (*See, e.g.*, 7/31/23 Docket Order; 8/3/23 Docket Order; 8/4/23 Docket Order; 8/14/23 Docket Order; 9/15/23 Docket Order;

4/11/24 Docket Order (each noting that Plaintiff failed to obey a Court-ordered deadline to serve or file a document).)[8]

In addition, as the parties were briefing Defendants' Motion to Dismiss, Plaintiff filed a letter indicating that he wished to "dismiss [his] negligence cause of action." (Pl.'s Ltr., Dkt. 27.) The Court directed Plaintiff to file a Second Amended Complaint with the negligence cause of action removed. (9/22/23 Docket Order.) Plaintiff did so, and the parties finished briefing the Motion to Dismiss. (*See* SAC, Dkt. 29; *see also* Defs.' Br., Dkt. 30-15; Defs.' Reply Supp. Mot. to Dismiss ("Defs.' Reply"), Dkt. 31; Defs.' Corrected Exhs. for Mot. to Dismiss, Dkt. 32; Pl.'s Resp. to Mot. to Dismiss ("Pl.'s Opp'n"), Dkt. 33.) Defendants' Motion to Dismiss is now ripe for decision with respect to Plaintiff's two remaining Fourteenth Amendment claims.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the court] accept[s] as true all factual allegations and draw[s] from

---

[8] The Court notes that Plaintiff is represented by counsel in this action.

8

them all reasonable inferences; but [the court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

"The question on a motion to dismiss 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *LM Ins. Corp. v. James River Ins. Co.*, No. 22-CV-7472 (ER), 2023 WL 5509264, at *3 (S.D.N.Y. Aug. 25, 2023) (quoting *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)). When considering a Rule 12(b)(6) motion, the court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006). As such, courts typically "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 558–59 (2d Cir. 2016) ("Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials."). In addition to the facts alleged in the complaint, courts may also consider documents that are appended to the complaint, incorporated in the complaint by reference, or integral to the complaint, as well as matters of which judicial notice may be taken, *Goel*, 820 F.3d at 559, so long as "no dispute exists regarding the accuracy of [those] document[s]," *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022).

# DISCUSSION

I. **Materials Considered by the Court**

Without much specificity, Plaintiff's Seconded Amended Complaint references Village Zoning Board meetings (SAC, Dkt. 29 ¶¶ 15, 25), a Village Board of Trustees meeting (*id.* ¶ 15), and other "public meetings with Village officials" (*id.* ¶ 16). In response, Defendants attach to their Motion to Dismiss minutes from five different Village Zoning Board meetings (9/17/20 ZBA Meeting Mins., Dkt. 32-2; 11/19/20 ZBA Meeting Mins., Dkt. 32-3; 12/17/20 ZBA Meeting Mins., Dkt. 32-4; 5/20/21 ZBA Meeting Mins., Dkt. 32-5; 5/26/22 ZBA Meeting Mins., Dkt. 32-10), two Village Planning Board meetings (6/3/21 Planning Board Meeting Mins., Dkt. 32-7; 7/1/21 Planning Board Meeting Mins., Dkt. 32-8), and one Village Board of Trustees meeting where Plaintiff (or his attorney) appeared (2/10/20 BOT Meeting Mins., Dkt. 32-1). Defendants also attach to their Motion certifications from the Village Zoning Board (Dkt. 32-6) and Village Planning Board (Dkt. 32-9) granting variances and architectural approval to Plaintiff, as well as sections of the Village Code (Village Code Ch. 4, Dkt. 32-11; Village Code Ch. 183, Dkt. 32-12).

"It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]" *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). When ruling on motions to dismiss, courts in this Circuit regularly consider town codes, public meeting minutes, and decisions of local bodies such as zoning boards. *See, e.g.*, *Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) ("Court[s] may . . . take judicial notice of all documents in the public record, including the decisions of the [zoning board], the decisions of the [state] Supreme Court . . . , and the provisions of the Village zoning code . . . ."); *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 337 n. 4 (E.D.N.Y. 2010) ("[T]he [c]ourt is permitted to take judicial notice of provisions of the Riverhead Town Code on a motion

to dismiss."); *Sacher v. Vill. of Old Brookville*, 967 F. Supp. 2d 663, 665 (E.D.N.Y. 2013) (taking judicial notice of village zoning board and state court decisions). Neither party disputes the accuracy of any of the documents attached to Defendants' Motion.[9] (*See generally* Defs.' Br., Dkt. 30-15; Defs.' Reply, Dkt. 31; Pl.'s Opp'n, Dkt. 33.) As such, the Court can and will consider the documents attached to Defendants' Motion to Dismiss in resolving this Motion.

## II. Section 1983 Generally

### A. Plaintiff Improperly Pleaded His Claims

As an initial matter, a "plaintiff asserting a cause of action based on the Fourteenth Amendment's . . . protections must rely on 42 U.S.C. § 1983, which 'provid[es] the basis for securing redress for constitutional violations.'" *Deniran v. Museum of Mod. Art*, No. 21-CV-9660 (RA) (SN), 2022 WL 3030508, at *2 (S.D.N.Y. June 17, 2022) (quoting *Pauk v. Bd. of Trs. of the City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981)), *R. & R. adopted*, 2022 WL 3030513 (S.D.N.Y. Aug. 1, 2022). Here, Plaintiff has failed to properly plead either of his claims because he has not done so through Section 1983, as is required when bringing damages claims for alleged Fourteenth Amendment violations. (*See* SAC, Dkt. 29 ¶¶ 30–46.) Despite this, the Court addresses each of Plaintiff's claims as if they were properly pleaded Section 1983 claims.

### B. Former Inspector Hayes's Actions Cannot Serve as the Basis of a Section 1983 Claim

Pursuant to Section 1983, local governments can only be liable for constitutional violations for actions taken "pursuant to official municipal policy" that ultimately caused a plaintiff's injuries. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. N.Y.C. Dep't of Soc.*

---

[9] In his Second Amended Complaint, Plaintiff calls into question the *intent* behind many of the statements and decisions made at the Village meetings for which Defendants provide meeting minutes. (*See, e.g.*, SAC, Dkt. 29 ¶¶ 11, 15, 28, 29.) He does not, however, dispute the accuracy of the minutes themselves. (*See id.*; *see also* Pl.'s Opp'n, Dkt. 33.)

*Servs.*, 436 U.S. 658, 691 (1978)). Put another way, "governing bodies," such as municipalities, cannot face liability "vicariously . . . solely on the basis of the existence of an employer-employee relationship" with a wrongdoer. *Monell*, 436 U.S. at 692.

Plaintiff argues that the Village should be held liable for former Inspector Hayes's alleged representation that Plaintiff would be permitted to build his home with a roof height that exceeded the Village's allowable limit for his zoning district. (SAC, Dkt. 29 ¶ 20.) However, under New York law and the Village Code, Inspector Hayes did not have the authority to grant variances. That authority rests with the Village ZBA. (*See* Village Code § 4-2, Dkt. 32-11 at ECF 2–3 (enumerating the Village ZBA's powers)); *see also* N.Y. Vill. Law § 7-712-b (vesting the power to grant zoning variances in village zoning boards of appeal). Plaintiff does not plausibly allege that Inspector Hayes acted pursuant to official municipal policy. (*See generally* SAC, Dkt. 29.) As a result, the Village cannot be held vicariously liable for any injuries caused by Plaintiff's reliance on Inspector Hayes's statements.

### III. Defendants' Motion to Dismiss

Plaintiff brings two causes of action in his Second Amended Complaint: (1) a Fourteenth Amendment due process claim; and (2) a Fourteenth Amendment selective enforcement claim. (*See* SAC, Dkt. 29 ¶¶ 30–46.) For the reasons described below, the Court grants Defendants' Motion to Dismiss in its entirety.

#### A. Plaintiff's Claims Against Mayor Siry

To state a Section 1983 claim against an individual defendant, "a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.'" *Boyd v. LaGuardia Airport*, No. 21-CV-5000 (KAM) (LB), 2022 WL 4357466, at *2 (E.D.N.Y. Sept. 20, 2022) (quoting *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015)). As

discussed, however, under New York law, zoning boards are "vested with the exclusive power to grant or deny, in the first instance, a variance from the zoning ordinances[.]" *Commco, Inc. v. Amelkin*, 62 N.Y.2d 260, 266 (N.Y. 1984); *see also Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267, 287 (S.D.N.Y. 2009) (same). While Mayor Siry appoints the members of the Village ZBA, *see* N.Y. Vill. Law § 7-712(2), he does not serve on or control it, (*see, e.g.*, 9/17/20 ZBA Meeting Mins., Dkt. 32-2 at 1 (listing ZBA members); 11/19/20 ZBA Meeting Mins., Dkt. 32-3 at 1 (same); 12/17/20 ZBA Meeting Mins., Dkt. 32-4 at 1 (same); 5/20/21 ZBA Meeting Mins., Dkt. 32-5 at 1 (same).). As such, it is not plausible that Mayor Siry caused Plaintiff's alleged injury—that is, the denial of the sought-after zoning variance in May 2022.[10] (*See generally* SAC, Dkt. 29.) Consequently, Mayor Siry is not a proper defendant and must be dismissed from the case.[11]

### B. Plaintiff's Claims Against the Village

#### 1. Plaintiff Fails to State a Fourteenth Amendment Due Process Claim

Plaintiff's first cause of action is a Fourteenth Amendment due process claim.[12] Plaintiff does not explicitly state in his Second Amended Complaint whether he brings a substantive or

---

[10] Plaintiff alleges that after he applied for the final variance in May 2022, Mayor Siry "said that he would ensure Plaintiff gets absolutely no approval on any further variance concerning the [Marion Road P]roperty." (SAC, Dkt. 29 ¶ 27.) Plaintiff does not, however, allege any facts suggesting that Mayor Siry took action to prevent Plaintiff from being granted a variance. (*See generally id.*) Without that, Plaintiff's allegations as to Mayor Siry's purported interference in the ZBA process are conclusory and insufficient to state a claim against him.

[11] Defendants also argue that Mayor Siry is entitled to qualified immunity. (*See* Defs.' Br., Dkt. 30-15 at 21–22.) The Court need not reach that argument, however, as Mayor Siry is dismissed from the case based on the insufficiency of Plaintiff's allegations against him.

[12] In his Second Amended Complaint, beneath the Count I heading, Plaintiff includes a second heading that reads "NEW YORK COMMON LAW[.]" (*See* SAC, Dkt. 29 at ECF 8.) The claim described in Count I, however, references the Fourteenth Amendment of the United States Constitution (*id.*) and generally sounds in due process, (*id.* ¶ 34 (alleging that Defendants sought "to deprive Plaintiff with [sic] his constitutional property rights in the [Marion Road] Property")). Moreover, in his response brief to Defendants' Motion to Dismiss, Plaintiff refers to his first cause

13

procedural due process claim. (*See* SAC, Dkt. 29 ¶¶ 30–34; Def.'s Br., Dkt. 30-15 at 10–16.) Regardless, the Second Amended Complaint fails to state either a substantive or procedural due process claim.[13]

"The Constitution imposes 'constraints[ ]' . . . on 'governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment.'" *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 427 (E.D.N.Y. 2021) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Those who wish to invoke the Constitution's due process protections, then, must establish that they had a protectable interest in the first place. *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016).

Plaintiff fails to do so here. Though his complaint is less than clear, Plaintiff seems to be suggesting that he had a protected property interest in receiving a zoning variance from the ZBA with respect to his oversized roof in May 2022. (*See* SAC, Dkt. 29 ¶ 32.) However, when an individual asserts a protected right in "a building permit or zoning variance, the existence of discretionary action with respect to such applications renders the alleged interest nonprotected." *Sacher*, 967 F. Supp. 2d at 672. So, where a "deciding authority has discretion to grant or deny

---

of action as "a claim for due process violations." (Pl.'s Opp'n, Dkt. 33 at 16.) Consequently, the Court construes Plaintiff's first claim as a Fourteenth Amendment due process claim.

[13] In paragraph 31 of the operative complaint, Plaintiff also alleges that Defendants' actions "constitute[ ] a monumental taking." (SAC, Dkt. 29 ¶ 31.) To state a claim for a violation of the Takings Clause, a plaintiff must show either a physical taking or a regulatory taking. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). A physical taking occurs when the government physically invades or appropriates an individual's property without just compensation. *Id.* A regulatory taking occurs when "a regulation goes 'too far' in restricting a landowner's ability to use his own property." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 565 (2d Cir. 2023), *cert. denied*, Nos. 22-1130 & 22-1170, 2024 WL 674658 (Feb. 20, 2024). Plaintiff does not allege that Defendants have physically invaded his property, nor does he adequately allege a regulatory taking. (*See generally* SAC, Dkt. 29.) Indeed, it would not be possible to do so based on denial of a zoning variance alone. *See infra* Part II.B.1 (explaining that Plaintiff does not have a protectable property interest in a zoning variance).

the relief requested, the individual applying for a permit or variance has no property interest in the issuance of a permit or grant of their application." *Id.* (citation omitted). Zoning boards of appeal, including the Village ZBA, have discretion to grant or deny applications for variances. *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 369 (S.D.N.Y. 2011) (explaining "[t]he discretion of zoning boards of appeals in granting or denying variance from zoning codes is well-settled" and collecting cases). Thus, because the ZBA performs a discretionary function when deciding whether to grant zoning variances, Plaintiff did not have a constitutionally protectable property interest in the variance that was denied in May 2022, and his due process claim—whether substantive or procedural—fails.[14]

### 2. Plaintiff Fails to State a Fourteenth Amendment Selective Enforcement Claim

There are two different theories available to state a selective enforcement claim under the Fourteenth Amendment: traditional selective enforcement claims (also known as "*LeClair* claims" in this Circuit) and class-of-one claims (also known as "*Olech* claims"). *See Hu v. City of N.Y.*, 927 F.3d 81, 90–91 (2d Cir. 2019) (citing *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980); *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam)) (describing the two theories). It is unclear whether Plaintiff seeks to proceed under a traditional selective enforcement theory or a class-of-one theory. (*See generally* Pl.'s Opp'n, Dkt. 33 at 17–18 (offering very limited argument on Plaintiff's equal protection claim).) In any event, Plaintiff fails to state a claim under either theory, as described below.

---

[14] Notably, Defendants argue in their Motion to Dismiss that Plaintiff failed to establish a constitutionally protected property interest, and, accordingly could not state a due process claim. (*See* Def.'s Br., Dkt. 30-15 at 10–11.) Plaintiff did not oppose this argument. (*See generally* Pl.'s Opp'n, Dkt. 33.)

###### a. Traditional Selective Enforcement Claim

To state a traditional selective enforcement claim, a plaintiff must allege that (1) he was "selectively treated" when "compared with others similarly situated," and that (2) "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu*, 927 F.3d at 91 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).

To meet this standard, a plaintiff must allege that similarly situated individuals were treated more favorably than he was. "Generally, whether two comparators 'are similarly situated is a factual issue that should be submitted to the jury.'" *LTTR Home Care, LLC, v. City of Mt. Vernon Indus. Dev.*, No. 17-CV-9885 (KMK), 2019 WL4274375, at *12 (S.D.N.Y. Sept. 10, 2019) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)). At this stage, "a court must determine whether, based on a plaintiff's allegations . . . , a jury could ultimately determine that the comparators are similarly situated." *Id.* Consequently, "[w]ell-pled facts showing 'that the plaintiff has been treated differently from others similarly situated, remain[ ] an essential component of such a claim.'" *Bishop v. Best Buy, Co. Inc.*, No. 08-CV-8427 (LBS), 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (quoting *Sweeney v. City of N.Y.*, No. 03-CV-4410, 2004 WL 744198, at *5 (S.D.N.Y. Apr. 2, 2004)), *aff'd sub nom. Bishop v. City of N.Y.*, 518 F. App'x 55 (2d Cir. 2013). And "[w]hile the circumstances need not be 'identical,' [p]laintiffs must establish that they were 'similarly situated in all material respects to the [comparators] with whom [they] seek[] to compare' themselves." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *5 (S.D.N.Y. Jan. 8, 2021) (quoting *Hu*, 927 F.3d at 96).

Here, Plaintiff has not plausibly alleged that he was treated "differently from others similarly situated." *Bishop*, 2010 WL 4159566, at *11 (quoting *Sweeney*, 2004 WL 744198, at

16

*5). "[W]here a plaintiff claims to have been treated unfairly in a zoning/building context, he must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged." *Amid v. Vill. of Old Brookville*, No. 11-CV-3800, 2013 WL 527772, at *6 (E.D.N.Y. Feb. 7, 2013). Plaintiff has not done so here. Instead, he merely alleges that "at least five variances for the same if not greater roof height had been approved for others similarly situated" and provides addresses for five other Amityville properties. (SAC, Dkt. 29 ¶¶ 38–39.) These allegations are conclusory and insufficient. As Defendants explain, Plaintiff has not pleaded whether the other properties sit in the same zoning district and are therefore subject to the same zoning restrictions. (Def.'s Br., Dkt. 30-15 at 17–19.) Nor has Plaintiff provided information on when the other variances were applied for or granted. *See Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015) (holding that plaintiff did not demonstrate similarity where he did not allege temporal proximity for proposed comparators). Finally, Plaintiff has not provided specific examples of what the granted variances were, and whether those properties had also received previous variances, and/or been subject to stop work orders for disobeying Village Code provisions without a variance. (*See* SAC, Dkt. 29 ¶¶ 38–39.)

Because Plaintiff has not plausibly alleged the existence of similarly situated comparators, he also has not alleged that he was treated differently from similarly situated comparators. Thus, Plaintiff has failed to state a traditional selective enforcement claim.[15]

---

[15] As a result, the Court need not reach the question of whether Plaintiff has adequately pleaded that the Village's actions were motivated by some impermissible consideration. *See Hu*, 927 F.3d at 91.

### b. Class-of-One Claim

A plaintiff can also state a selective enforcement claim on a "class of one" theory. *See Hu*, 927 F.3d at 91. To do so, a plaintiff need not "allege membership in a class or group." *Id.* (citation omitted). Instead, the plaintiff must allege that (1) he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment. *Id.* Because this type of claim does not require the plaintiff to demonstrate any discriminatory motive, the Second Circuit has set forth an "'extremely high' similarity standard for comparators under this theory. *Id.* at 94. Specifically, under a class-of-one theory, a plaintiff must allege that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.* (citation omitted). Because Plaintiff has failed to state a claim under the lower standard for similarity required by a traditional selective enforcement claim, *see supra* Part III.B.2.a, he has also failed to state a claim under the more demanding class-of-one standard for similarity.

Accordingly, Plaintiff's selective enforcement claim must be dismissed.

## CONCLUSION

For the reasons explained above, the Court grants Defendants' Motion to Dismiss and dismisses all claims in the Second Amended Complaint with prejudice. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 24, 2024
Brooklyn, New York

18